

FILED

2022 Jul-19  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SAMANTHA HARDIN and MONEKA CHANTE MOORE, Personal Representative for the Estate of Jamarcus Moore,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | Civil Action Number **2:21-cv-01002-AKK** |
| **v.** | ) ) ) | |
| **CITY OF BIRMINGHAM and ARIC MITCHELL,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In June 2019, City of Birmingham police officers engaged in a car chase of Jamarcus Moore and Samantha Hardin, whom Officer Aric Mitchell had attempted to pull over before Mr. Moore sped away.  After an approximately 20-minute-long pursuit during which officers reported gunshots, Officer Mitchell collided with Mr. Moore's sedan, fatally shot Mr. Moore, and seriously wounded Hardin.  Hardin and Moneka Chante Moore, the personal representative for Mr. Moore's estate, subsequently sued Officer Mitchell for excessive force under 42 U.S.C. § 1983 and sued both him and the City for wrongful death and assault and battery.  *See* doc. 13.

Officer Mitchell and the City move for summary judgment primarily based on federal and state-law immunities.  Docs. 37; 38.  Having reviewed the briefing and the evidence, the court will grant the motion only as to the § 1983 claims based on the collision.  As to the other claims, genuine disputes remain regarding Officer Mitchell's use of force in shooting Mr. Moore and Hardin, who were possibly incapacitated after the collision, and regarding the claims to immunity based on this conduct.

## I.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a).  Summary judgment is due "if the movant shows that there is no genuine dispute as to any material fact."  *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, then the nonmovant must establish an issue for trial, meaning "that a reasonable jury could return a verdict for the nonmoving party."  *Catrett*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At this stage, the court construes the evidence and reasonable inferences arising from it in the light most favorable to the nonmovant.  *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).  "And if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a

genuine issue of material fact, a court cannot grant summary judgment." *Id.*  As a result, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible." *Id.*  However, where evidence such as video footage contradicts a party's version of events, the court must view the facts as depicted by the evidence, not the party's narrative. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## II.[1]

On June 15, 2019, Officer Mitchell stopped behind a Toyota sedan at a traffic light in Birmingham.  Doc. 39-3 at 34.  Officer Mitchell "smelled the odor of marijuana," saw a driver (Mr. Moore) and a passenger (Hardin) inside the sedan, and noticed the driver "cutting lights on and looking around." *See id.* at 34, 38.  Having "recovered a couple stolen cars out there in that area," Officer Mitchell entered the sedan's license plate into a database and apparently, though perhaps incorrectly, identified the license plate as corresponding to another vehicle. *See id.* at 33–34.  A dispatcher also purportedly confirmed that the plate belonged to another vehicle. *See id.* at 35–38.

---

[1] The court recounts the following undisputed facts and, where applicable, notes where the parties diverge in their retellings.  Because this matter comes on Officer Mitchell's and the City's motion, the court construes the evidence and reasonable inferences arising from it in Hardin's and Ms. Moore's favor.  And, given that the parties supply bodycam footage, *see* docs. 39-7; 39-8, the court adopts the facts as depicted by the videos where they refute or undermine a party's version of events. *See Scott*, 550 U.S. at 380–81.

Officer Mitchell activated his patrol car lights, and Mr. Moore turned and stopped the sedan. Doc. 39-3 at 42. But before Officer Mitchell exited his patrol car, Mr. Moore "took back off," made a U-turn, and sped away. *See id.* Officer Mitchell gave chase, and Officers Michaela Hood, Shantara Foster, Timmy Turner, and Kenneth Cole joined in the pursuit. *Id.* at 45. Footage from Officer Mitchell's bodycam depicts his patrol car speeding through traffic lights as he radios other officers to convey the towns through which the chase proceeded. *See* doc. 39-7. In total, Mr. Moore drove through Bessemer, Brighton, Lipscomb, Hueytown, Birmingham, and Midfield primarily through Interstate-20/59. *See* docs. 38 at 5; 39-3 at 45; 43 at 7.

About 15 minutes into the pursuit, Officer Mitchell radioed about locating impediments like "spike strips" to stop Mr. Moore, but the officers could not or did not use any. *See* doc. 39-7 at 17:29–17:45. Soon after, a unit on Officer Mitchell's radio announced, "Shots fired, shots fired," and Officer Mitchell repeated, "He just shot. . . . Let [inaudible] know he is shooting. He did discharge a firearm." *Id.* at 18:06–18:18. In Officer Hood's bodycam video, she seems to say, "Radio, I think he's shooting, I think he's shooting. . . . He shot–shooting at me." Doc. 39-8 at 6:58–7:12; *see* doc. 44–4 at 2. Officer Mitchell also testified that he heard gunshots and observed a "muzzle flash coming out the driver's window." Doc. 39-3 at 45.

4

According to Hardin, however, neither she nor Mr. Moore ever "fire[d] a gun, either out of the window or at anyone else."  Doc. 44-6 at 2–3.

About one minute after they reported gunfire, Officers Mitchell and Hood radioed that Mr. Moore was going toward Hueytown.  Docs. 39-7 at 19:00–20:00; 39-8 at 8:20–8:25.  The pursuit continued for several minutes, *see* doc. 39-7 at 20:00–23:00, and as the chase traversed Hueytown Road, Officer Mitchell instructed the officers to give Mr. Moore "some room," *id.* at 23:43–23:46.  The chase concluded when Officer Mitchell's patrol car collided with the sedan and Officer Hood's patrol car after the three vehicles turned right onto Allison-Bonnett Memorial Drive.  *See id.* at 23:46–23:53; doc. 44-6 at 3.  Officer Mitchell testified that he collided with the sedan inadvertently as Mr. Moore made a right, *see* doc. 39-3 at 47, and Officer Hood averred that Mr. Moore caused the collision when he "lost control" while "attempting to navigate a curve at a high rate of speed," *see* doc. 39-5 at 4.  Hardin disputes this, contending that Mr. Moore was slowing to make the turn and that Officer Mitchell intentionally crashed into them or used a "Pursuit Intervention Technique" maneuver to end the chase.  *See* docs. 43 at 9; 44-5 at 71.[2]

Following the collision, the sedan became "disabled" and came to a stop, and Mr. Moore and Hardin remained inside.  *See* docs. 39-3 at 50; 39-10 at 3; 44-6 at 3.

---

[2] Officer Mitchell testified that he had never been trained to perform a PIT maneuver because the City does not permit such a tactic.  Doc. 39-3 at 50.

Officer Mitchell immediately exited his patrol car, approached the sedan, and pointed his firearm at the driver's window. Doc. 39-7 at 23:53–23:58. Officer Hood testified that before she exited her patrol car after the crash, she heard Officer Mitchell tell Mr. Moore and Hardin to show their hands and then "heard gunfire." Doc. 39-5 at 4. However, Officer Mitchell and Hardin averred that Officer Mitchell gave no instructions or warnings when he approached the sedan. *See* docs. 39-3 at 51; docs. 44-6 at 3–4.

When Officer Mitchell approached the sedan and raised his gun, his arms partially obscured his bodycam, and so this footage is somewhat blurry and the audio distorted. Doc. 39-7 at 23:58–24:02. In his retelling, Officer Mitchell "reached in [the car] to try to grab [Mr. Moore]" and saw Mr. Moore "reaching down for the gun that was on the floorboard" with one hand while looking up at Officer Mitchell, prompting Officer Mitchell to step back and shoot. Doc. 39-3 at 50–53. In the footage, however, Officer Mitchell—the only officer then near the sedan—does not appear to reach into the driver's window at first. Rather, he steps back and fires at the window before pulling at the driver's door and then reaching into the car, at which point the bodycam—now eye-level with the door—shows a broken driver's window, and Hardin can be heard exclaiming that he shot her leg. *See* doc. 39-7 at 23:56–24:12. At no point before the gunfire does the bodycam clearly show Mr. Moore either reaching or motionless. *See id.* According to Hardin, she and Mr.

6

Moore were disoriented after the collision and did not move or reach for a gun before Officer Mitchell fired.  Docs. 44-5 at 80; 44-6 at 3–4.

After the gunfire, other officers, including Officer Hood, ran up to the sedan, and several pulled Mr. Moore from the car.  Docs. 39-7 at 24:12–24:18; 39-8 at 13:00–13:20.  Although Officer Hood's May 2022 affidavit says that she saw a gun on the sedan's floorboard after unbuckling Mr. Moore's seatbelt, doc. 39-5 at 4, her signed June 2019 statement says that she moved a gun from the driver's door to the floorboard "to get it out of reach," doc. 44-4 at 2.  Her bodycam footage appears to support the latter account.  *See* doc. 39-8 at 13:15–13:20.

Mr. Moore died of a gunshot wound soon after, doc. 44-3 at 2, and Hardin suffered a gunshot wound to her leg that required medical care and caused her scarring and nightmares, doc. 44-5 at 82–83.  Hardin's and Ms. Moore's lawsuit followed.  They have sued Officer Mitchell for excessive force under 42 U.S.C. § 1983; Hardin also sued Officer Mitchell and the City for assault and battery, and Ms. Moore sued them for wrongful death.  *See* doc. 13.

## III.

Officer Mitchell and the City seek summary judgment on the basis of federal and state-law immunity doctrines.  *See* doc. 37.  The court's analysis begins with the federal claims and Officer Mitchell's assertion of qualified immunity.

A.

State officers acting within their discretionary authority receive qualified immunity from § 1983 claims "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999)). If the officer establishes that they were performing discretionary functions during the alleged conduct, the plaintiff must establish (1) the violation of a constitutional right and (2) that the right was "clearly established" at the time.[3] *Id.*; *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Hardin and Ms. Moore do not dispute that Officer Mitchell was engaged in discretionary functions during the incident, doc. 43 at 16, but claim that he violated clearly established Fourth Amendment law.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST., AMEND. IV. "[A] seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011). As relevant to the § 1983 claims here, two potential seizures occurred: (1) Officer Mitchell's

---

[3] "[A] constitutional right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . [Courts] examine cases that announce general constitutional rules and cases that apply those rules to factual circumstances to determine if a reasonable public official, who is charged with knowledge of such decisions, would have understood the constitutional implications of his conduct." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

possibly intentional collision with the sedan,[4] which stopped Mr. Moore's and Hardin's flight, and (2) Officer Mitchell's gunfire, which fatally wounded Mr. Moore and injured Hardin. *See id.*

"[A]ll claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 394–95 (1989) (emphasis omitted). To determine the reasonableness of Officer Mitchell's actions, the court must consider whether a reasonable officer would have believed his levels of force necessary. *See Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). This assessment "depends on 'the facts and circumstances of [the] particular case,'

---

[4] The operative complaint pleads § 1983 claims based only on the shooting, not on the collision. *See* doc. 13. After the close of discovery and several months after the amendment deadline, Hardin and Ms. Moore sought extensions for additional discovery and to add § 1983 claims explicitly predicated on the collision. *See* docs. 33; 33-1. Hardin and Ms. Moore also sought a discovery conference; however, because they failed to provide the requisite source material and hearing notice, the court had to cancel this conference and does not know what the dispute concerned. *See* doc. 35. The court also denied the motion for extensions at that point because the motion offered no good cause for the requests, particularly after the expirations of the relevant deadlines. *See* doc. 36. Now, Hardin and Ms. Moore implicitly expand their federal claims to cover the collision. Upon making this observation, the court expected Officer Mitchell and the City to raise this problem in their briefing, but they did not. This is surprising, considering that the plaintiffs' brief expressly challenges the collision, docs. 43 at 17, which the defendants' reply meets on the merits, *see* doc. 46 at 3, 6–7 (citing Officer Mitchell's testimony that "he did not intentionally crash his vehicle into [the sedan]" or "execute or attempt a Pursuit Intervention Technique ('PIT') maneuver"). In light of the defendants' apparent acceptance of the claim's existence, the court deems the issue waived and understands the plaintiffs to defend, on summary judgment, claims for excessive force predicated on both the collision and the shooting. *See McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020) ("Generally, arguments are considered 'waived' when they are not raised in the district court.").

including a non-exhaustive list of factors, such as (1) 'the severity of the crime at issue'; (2) 'whether [Mr. Moore] pose[d] an immediate threat to the safety of the officers or others'; and (3) 'whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021) (quoting *Graham*, 490 U.S. at 396).

1.

Hardin and Ms. Moore contend that Officer Mitchell intentionally and unreasonably rammed his patrol car into the sedan to stop the chase as Mr. Moore slowed to make a turn.  While Officer Mitchell disputes this, the bodycam footage does not endorse any one version of events.  Because a factfinder could credit Hardin's testimony, the court presumes on Officer Mitchell's motion that he intentionally caused the collision and effected a seizure.  *See Beshers v. Harrison*, 495 F.3d 1260, 1266 (11th Cir. 2007) (adopting the presumption that the officer seized the appellant because, if the jury credited the appellant, "a reasonable juror could determine [the officer] intentionally collided with [him]").  This presumption brings Officer Mitchell's conduct within the ambit of the Fourth Amendment.[5]  The Fourth Amendment analysis, in turn, requires the court not only to consider the

---

[5] *See Beshers*, 495 F.3d at 1265–66 ("[I]f a police cruiser pulls alongside a fleeing car and sideswipes it, thereby producing a crash, a seizure occurs. But if a suspect in a police chase unexpectedly loses control of his car and crashes, no seizure occurs."). *See also Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) ("[A]pplication of physical force to the body of a person with *intent to restrain* is a seizure . . . .") (emphasis added).

severity of Mr. Moore's suspected offenses and whether he was evading police but also to weigh "the risk of bodily harm [Officer Mitchell's] actions pose[d] to [Mr. Moore]" against "the governmental interests of ensuring public safety and eliminating the threat caused by [Mr. Moore]" in his flight.  *See id.* at 1267.

Officer Mitchell apparently suspected Mr. Moore of driving a stolen vehicle and of possessing or using cannabis.  *See* doc. 39-3 at 34–38.  A jury could permissibly find that a reasonable officer would not think it necessary to collide her or his patrol car into Mr. Moore's sedan to apprehend him for these potential offenses.  *See Graham*, 490 U.S. at 396; *Lee*, 284 F.3d at 1197.  At the same time, however, the chase had proceeded for upwards of 20 minutes through several towns by the time of the collision, and it is undisputed that the officers believed that Mr. Moore and Hardin were firing shots about 15 minutes into the pursuit.  And the evidence indicates that the collision itself caused Mr. Moore only "abrasions and superficial lacerations on the skin," injuries "consistent with those occurring during a motor vehicle collision but . . . not significant enough to result in death."  Doc. 44-3 at 8.  In other words, although Officer Mitchell did not initially attempt to stop Mr. Moore for dangerous offenses, Officer Mitchell had reason to believe that Mr. Moore's flight was placing officers and civilian bystanders in danger, and there is no evidence that the collision caused Mr. Moore or Hardin serious bodily injuries.

To be sure, it is not obvious that the chase, which occurred at night and at least partially on an interstate, accelerated greatly beyond the speed limit or involved blatantly hazardous driving.[6]  And Hardin contends that neither she nor Mr. Moore fired a gun and that Officer Mitchell rammed his patrol car into the sedan as Mr. Moore was slowing down.  Even accepting this, however, a reasonable jury could not infer that Officer Mitchell exceeded the bounds of reasonableness in allegedly causing a non-fatal, non-severe collision to end a 20-minute-long chase involving what he believed to be gunfire endangering officers and the public.  *See Willis v. Mock*, 600 F. App'x 679, 684–85 (11th Cir. 2015); *Perez v. City of Hialeah*, No. 19-cv-24047-COOKE/GOODMAN, 2022 WL 1446682, at *16 (S.D. Fla. Mar. 31, 2022) (citing *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)).  Consequently, Officer Mitchell is entitled to qualified immunity on the collision-based § 1983 claims.[7]

---

[6] In *Scott*, the Supreme Court held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."  *See* 550 U.S. at 386.  But there, the Court characterized the driver as "swerv[ing] around more than a dozen other cars, cross[ing] the double-yellow line, . . . forc[ing] cars traveling in both directions to their respective shoulders to avoid being hit[,] run[ning] multiple red lights[,] and travel[ing] for considerable periods of time in the occasional center left-turn-only lane." *Id.* at 379.  Likewise, in *Beshers*, the evidence illustrated that the officer, who caused a fatal crash, had reason to believe the driver was intoxicated and that the driver wove in and out of traffic, crossed the double-yellow center line, drove on the wrong side of the road, forced others off the road, crashed into a civilian's vehicle, and rammed into the officer's patrol car "several times" while traveling between 55 and 65 miles per hour.  *See* 495 F.3d at 1268.

[7] Alternatively, if Officer Mitchell indeed unconstitutionally caused the collision, Hardin and Ms. Moore have not established that this violated clearly established Fourth Amendment law.  For cases before this court, "[t]he usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or

2.

Hardin and Ms. Moore also challenge Officer Mitchell's use of force in firing into the sedan, killing Mr. Moore and seriously injuring Hardin after the crash. An officer may use "deadly force" such as gunfire to "seize a fleeing felony suspect" when the officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[,] or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force [is] necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

*Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003) (internal quotation marks omitted) (emphasis in original).

The evidence indicates that following the crash, the sedan was not immediately drivable, and Hardin averred that both she and Mr. Moore "[were] just sitting there" and "not moving or attempting [to] leave." *See* doc. 44-6 at 3. Though the collision occurred about five or six minutes after officers reported gunfire, according to Hardin, Mr. Moore was not reaching for a gun when Officer Mitchell approached the sedan. *See id.* Rather, she testified, Officer Mitchell "just ran up to

---

[the Eleventh Circuit] found a violation based on materially similar facts." *Johnson*, 18 F.4th at 1273. Hardin and Ms. Moore have not provided, nor has the court located, binding precedent demonstrating that Officer Mitchell had "fair warning" that causing a non-severe, non-fatal collision to end this chase would violate the Constitution.

the driver side of the car where [Mr. Moore] was sitting and started shooting" without giving "any warning before firing the shots." *Id.*

The bodycam footage does not clearly show Mr. Moore, reaching or otherwise, and a reasonable jury could credit Hardin's testimony that she and Mr. Moore were motionless and disoriented from the crash when Officer Mitchell approached and fired without warning. Officer Mitchell's bodycam shows that the collision occurred around minute mark 23:51 and that he exited his patrol car at 23:56, stood next to the driver's side of the sedan with his gun raised by 23:59, and stepped back and fired at 24:01. *See* doc. 39-7. All told, Officer Mitchell shot into the sedan from just outside the driver's door within 10 seconds of the crash and five seconds or less of his approach. *See id.* Although a jury could certainly accept that Officer Mitchell believed that Mr. Moore was reaching for a gun, a jury could also credit Hardin's account that she and Mr. Moore were essentially incapacitated and did not reach for a weapon after the crash. Because Circuit case law clearly establishes that this use of force, under Hardin's account, would exceed a reasonable

response, *see Hunter v. City of Leeds*, 941 F.3d 1265, 1281 (11th Cir. 2019),[8] Officer

Mitchell's motion is due to be denied as to these § 1983 claims.[9]

B.

Officer Mitchell asserts state-agent immunity from the state-law claims.  The

City attempts to piggyback off of his immunity from the wrongful death claim and

independently asserts municipal immunity from the assault and battery claim.

1.

Officer Mitchell contends that he cannot be liable for the assault and battery

claim or wrongful death claim under the "Alabama immunity doctrine for peace

officers, set forth statutorily in [Alabama] Code § 6-5-338."  Doc. 38 at 17.  Section

6-5-338 provides, in relevant part:

> Every peace officer . . . , who is employed or appointed pursuant to the
> Constitution or statutes of this state . . . and whose duties prescribed by
> law, or by the lawful terms of their employment or appointment, include
> the enforcement of, or the investigation and reporting of violations of,
> the criminal laws of this state, and who is empowered by the laws of
> this state to execute warrants, to arrest and to take into custody persons
> who violate, or who are lawfully charged by warrant, indictment, or

---

[8] "The use of deadly force against a suspect who, though initially dangerous, has been disarmed
or otherwise become non-dangerous, is conduct that lies 'so obviously at the very core of what the
Fourth Amendment prohibits that the unlawfulness of the conduct [is] readily apparent.'"  *Hunter*,
941 F.3d at 1281 (quoting *Lee*, 284 F.3d at 1199, quoting in turn *Priester v. City of Riviera Beach*,
208 F.3d 919, 926 (11th Cir. 2000)).  Because a reasonable jury could credit Hardin's testimony
or find discrepancies in Officers Mitchell's and Hood's accounts and determine that Mr. Moore
and Hardin were disoriented, stationary, and not reaching for a weapon, a jury could conclude that
Officer Mitchell had "fair warning" that firing into the sedan was unconstitutional.  *See id.*

[9] The City also claims that Hardin and Ms. Moore fail to establish municipal liability for Officer
Mitchell's actions, *see* doc. 38 at 23–24, but Hardin and Ms. Moore did not plead any § 1983
claims against the City, *see* doc. 13.  This aspect of the motion is therefore moot.

other lawful process, with violations of, the criminal laws of this state, . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

ALA. CODE § 6-5-338(a).  Thus, under Alabama law, an officer is immune from claims arising from the officer's "exercising judgment in the enforcement of the criminal laws," including "arresting or attempting to arrest persons." *Ex parte City of Montgomery*, 272 So. 3d 155, 160 (Ala. 2018) (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)) (internal quotation marks omitted).  If the officer meets the initial burden of establishing that the plaintiff's claim arises from this type of conduct, then the plaintiff can pierce the officer's presumptive immunity by showing that the officer (1) acted in contravention of the U.S. Constitution, federal laws, the Alabama Constitution, or Alabama laws or regulations "enacted or promulgated for the purpose of regulating the activities of a governmental agency" or (2) "act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* at 160–61 (internal quotation marks omitted).  Practically speaking, the Alabama Supreme Court has "largely equated" this doctrine with qualified immunity. *Hunter*, 941 F.3d at 1284.

Hardin's and Ms. Moore's state-law claims challenge Officer Mitchell's gunfire, *see* doc. 13 at 5–8, and Officer Mitchell asserts that he was enforcing criminal law by investigating and trying to arrest suspected offenders at that time, *see* doc. 38 at 20.  Hardin and Ms. Moore do not appear to dispute this. *See* doc. 43

16

at 26.   Thus, Officer Mitchell has established his presumptive entitlement to immunity.

Hardin and Ms. Moore contend, however, that Officer Mitchell "acted beyond his authority and in violation of clearly established law when he fired four shots at [Mr.] Moore and Hardin . . . because [they] were incapacitated and unarmed." Doc. 43 at 26.  While the evidence suggests that there was a weapon in the sedan, genuine disputes remain as to whether Mr. Moore reached for it or otherwise posed a threat such that a reasonable officer would believe she or he needed to respond with deadly force.  *See supra* § III.A.  Accordingly, Hardin and Ms. Moore have met their burden of showing that Officer Mitchell acted in contravention of the U.S. Constitution and beyond his authority when he fired into the sedan.  As with his claim to qualified immunity, he cannot claim the benefit of state-agent immunity from these claims.

2.

The City claims that it is immune from liability for (1) the wrongful death claim because it receives the benefit of Officer Mitchell's immunity and (2) the assault and battery claim because municipalities cannot be liable for their officers' intentional torts.  *See* doc. 38 at 23–28.  But a reasonable jury could find that Officer Mitchell violated the Fourth Amendment and exceeded his authority when he fatally shot Mr. Moore, meaning that Officer Mitchell would not be entitled to state-agent immunity.  *See supra* § III.B.1.  Consequently, there is no immunity to impute to the

City.  *See City of Montgomery*, 272 So. 3d at 160 ("[I]f a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

As to the assault and battery claim against it, the City accurately observes that Alabama municipalities are immune from liability for their officers' intentional torts. *See* ALA. CODE § 11-47-190; *Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010).  However, the City overlooks that assault and battery claims can be predicated on negligence and thus proceed against municipalities.  *See, e.g.*, *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003).  Here, Hardin and Ms. Moore have asserted that Officer Mitchell, while directing deadly force at Mr. Moore, inadvertently shot and wounded Hardin, perhaps through negligence, carelessness, or a lack of skill.  *See* doc. 39-3 at 53; ALA. CODE § 11-47-190. Accordingly, the City does not automatically receive immunity from Hardin's assault and battery claim under § 11-47-190, and the City's motion is due to be denied as to both state-law claims against it.

## IV.

Finally, Officer Mitchell and the City challenge Hardin's and Ms. Moore's requests for punitive damages because, they say, (1) Officer Mitchell did not engage in fraud, oppression, or malice, and (2) federal and state law preclude the recovery of punitive damages against municipalities for their officers' actions.  *See* doc. 38 at

28.  For their part, Hardin and Ms. Moore concede that "the City is not liable for punitive damages under federal law"[10] but argue that the City can be liable for punitive damages up to $100,000 on each state-law claim.  *See* doc. 43 at 28–29.

Alabama law bars the recovery of punitive damages "in any civil action" except (1) "civil actions for wrongful death" and (2) tort actions "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." ALA. CODE § 6-11-20.  Alabama law also sets caps on damages:

> [N]o recovery may be had under any judgment or combination of judgments . . . arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.

ALA. CODE § 11-47-190.  Section 11-93-2 provides in turn that

> [t]he recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence.

ALA. CODE § 11-93-2.  Taking these provisions together, to recover punitive damages up to $100,000 total on the assault and battery claims, Hardin must provide

---

[10] The City's argument and the plaintiffs' concession overlook the obvious, *i.e.*, that Hardin and Ms. Moore only allege § 1983 claims against Officer Mitchell, not the City.  *See supra* n.9.

clear and convincing evidence that Officer Mitchell "consciously or deliberately engaged in oppression, fraud, wantonness, or malice" against her.  *See* ALA. CODE § 6-11-20.  And, as for Ms. Moore, punitive damages are generally available on the wrongful death claims up to $100,000 in total.  *See id.* §§ 6-11-20, 11-93-2.

As an initial matter, in light of these statutes, the court will not dismiss the claim for punitive damages on the wrongful death claims up to $100,000, as permitted by § 6-11-20 and § 11-93-2.  As to Hardin's assault and battery claims, construing the evidence in her favor, the court finds that a reasonable jury could conclude that Officer Mitchell behaved with wantonness or oppression when he injured Hardin while shooting at Mr. Moore.  While the evidence does not suggest that Officer Mitchell intentionally injured Hardin, as required for fraud or malice, a jury could find that Officer Mitchell behaved "with a reckless or conscious disregard of [Hardin's] rights or safety" or subjected her to "cruel and unjust hardship in conscious disregard of [her] rights" when he fired several shots at the driver's side of the sedan within seconds of approaching it.  *See* ALA. CODE § 6-11-20; doc. 39-7 at 23:56–24:01.  Though the jury may ultimately credit Officer Mitchell's and the City's evidence to the contrary, summary judgment is not due on the request for punitive damages up to $100,000 on the assault and battery claims.

Finally, as to the § 1983 claims—which are only against Officer Mitchell— punitive damages are recoverable "when the defendant's conduct is shown to be

20

motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Benjamin v. Am. Airlines, Inc.*, 32 F. Supp. 3d 1309, 1323 (S.D. Ga. 2014) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Again, while the evidence does not suggest evil motive or intent on Officer Mitchell's part, a reasonable jury could infer his reckless or callous indifference to Hardin's and/or Mr. Moore's Fourth Amendment rights. Accordingly, the motion is also due to be denied as to the punitive damages claims against Officer Mitchell under § 1983, to the extent these requests are challenged.

## V.

In sum, although a reasonable jury could not find that Officer Mitchell's allegedly intentional collision with the sedan exceeded the bounds of reasonable force, genuine disputes persist as to the reasonableness of Officer Mitchell's gunfire into the sedan immediately after the collision.  In addition, the claims and the evidence permit Hardin's and Ms. Moore's requests for punitive damages, subject to applicable state-law caps.  As a result, the court **GRANTS** the motion for summary judgment, doc. 37, only as to the § 1983 claims predicated on the collision, and these claims are **DISMISSED WITH PREJUDICE**.  In all other respects, the motion, *id.*, is **DENIED**.  This case will proceed to a trial solely as to the § 1983

claims against Officer Mitchell based on the shooting and as to the wrongful death and assault and battery claims against him and the City.[11]

      **DONE** the 19th day of July, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[11] The pretrial conference and the trial scheduled for January 5, 2023, and February 6, 2023, respectively, *see* doc. 12, are **CANCELLED** and will be rescheduled by the next judge assigned to this matter.