FILED
2024 Feb-01 PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# RULES AND REGULATIONS

PROCEDURE NO. 113-3

## USE OF FORCE

| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 05/20/2020 | 05/20/2020 | 14 | Page 1 of 17 |

PURPOSE: This policy is to establish and regulate the decision to respond to resistance (force), to regulate the manner in which force is used, and to establish procedures for reporting the response to resistance. Also to regulate the authority to carry and use weapons in the performance of their official capacity as police officers. (CALEA 1.2.2)

This rule and regulation is for internal use only and is not intended to enlarge the employee's civil or criminal liability in any way. This policy will not be construed as the creation of a higher legal standard of safety or care, insofar as the employee's legal duty is imposed by law or discretion authorized by law.

Non-compliance with this policy constitutes a violation of an employment duty only, except in such a case as any non-compliance may also be a violation of law. Therefore, violations of the Rule and Regulation will only form the basis of corrective action within this Department.

I. DEFINITIONS

A. USE OF FORCE:

Any response utilizing force that is greater than verbal or soft hand control technique or the level of control required is a level III or greater as defined in section II-E of this Procedure.

B. CONTROL:

The force an officer uses to influence or neutralize the unlawful, physical actions of a subject under arrest. Generally, there are four times an officer is justified in using physical control methods. They are: to stop potentially dangerous and unlawful behavior; to protect the officer or another from injury or death; to protect subjects from injuring themselves; and in the process of effecting lawful arrest or detention when the subject offers resistance.

C. LETHAL FORCE:

1. Physical force which is readily capable of causing death or serious bodily injury.

2. Using a lethal weapon or dangerous instrument to threaten, intimidate, or physically harm constitutes use of "Lethal Force".

D. SERIOUS BODILY INJURY:

An injury which is grave and which gives rise to the apprehension of danger to life, limb or health.

2:21-cv-01002-AMM
01/29/2024 Trial
Plaintiff Exhibit No. 8

PLAINTIFF'S
EXHIBIT
11
ROCKETT
4/7/22
SL
PENGAD 800-631-6989



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 2 of 17 |

E. REASONABLY BELIEVES:

To have knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same facts, to reasonably conclude the same thing.

F. IMMEDIATE THREAT:

A statement or other indication of intention to hurt or injure another that is capable of being carried out without intervening lapse or interval.

G. BODILY INJURY

Any impairment of physical condition of the body.

H. RESISTANCE:

Behavior by the subject in an attempt to evade an officer's attempts of control.

I. VIOLENT FELON:

Any person who has been identified as participating in the commission or attempt of a murder, manslaughter, forcible rape, forcible sodomy, aggravated assault, kidnapping or armed robbery.

J. OBJECTIVELY REASONABLE:

In determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of known circumstances, including but not limited to the seriousness of the crime, the level of threat or resistance presented by the subject and the danger to the community.

K. DE-ESCALATION:

Taking action or communicating verbally or non-verbally during a potential force encounter in an attempt to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presence, advisements, warnings, verbal persuasion, and tactical repositioning.



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 3 of 17 |

II. PROCEDURES

A. USE OF FORCE TRAINING

No Police Department employee will be authorized to carry and /or use a firearm or other lethal weapon until he has:

1. Been issued copies of the Rules and Regulations: 113-3 USE OF FORCE AND 113-2 FIREMARMS AND AMMUNITION: POLICY AND PROCEDURE; and

2. Has received instruction in both. Such issuance and instruction will be documented by the Training Unit. (CALEA 1.3.12)

B. Police employees are confronted frequently with varying levels of resistance where, in order to protect the public safety, control must be exercised to effect arrests, overcome physical resistance and neutralize assaults. Control may be achieved through advice, warning and persuasion, or by the use of physical force. There are varying degrees of control that may be justified depending on the dynamics of a situation. (CALEA 1.3.1)

C. The use of excessive force, regardless of the provocation or action of the offender, will result in certain and severe corrective action and may result in criminal prosecution. (CALEA 1.3.1)

D. Justification of the response to resistance in the judicial system is measured by two broad standards. First, the officer's use of control methods was initiated by a subject's resistance. Second, the level of physical force used by the officer was reasonable and not excessive when considering the type of resistance offered by the subject. (CALEA 1.3.1)

E. Response to resistance continuum:

The following continuum is meant to be used as a guide for an officer to select effective, reasonable and legal, force options during a verbal or physical encounter. As a subject increases his/her resistance level from verbal to physical , an officer may have to increase the level of his/her response until the resistance ceases and the officer can gain control of the subject. As soon as the point of compliance is reached the officer must de-escalate his/her response level to the minimum force necessary to control the subject.

1. Subject Resistance Levels



a. Level I Resistance – Psychological Intimidation

Non-verbal cues indicating the subject's attitude, appearance, and physical readiness. (Blank stare, clenching of fist(s), tightening of jaw muscles, etc.) The subject may comply with verbal attempts at control but displays visual nonverbal cues that indicate potential physical resistance. Non-verbal actions, including body language, often influence an officer's decision on how to approach a subject or what level of force to use if a subject starts to resist arrest. Non–verbal intimidation actions may include clenching fist, widening of foot stance, or a blank expression that may warn an officer of an individual's emotional state. An officer that reads the non-verbal signals and believes that physical control is necessary to prevent a subject from injuring himself, others, or the officer, may initiate action before any overt moves are made by the subject.

b. Level II Resistance – Verbal Non-Compliance

Verbal Non-Compliance is any verbal response indicating a subject's unwillingness to obey commands of detainment, arrest, or to stop unlawful or dangerous behavior. Verbal non-compliance may come in the form of a quite statement such as, "No, I will not put my hands behind my back", to threatening verbal statements directed at the officer.

Dialogue in the form of threats of physical injury may influence an officer's opinion to the amount of force needed to effect control. An offender may boast of his fighting skill and his intention to injure the officer. The officer's judgment to attempt empty hand control, impact weapons, or even firearms may be elevated, in part, by resistive dialogue from the offender. An officer's decision of the level of force necessary to control a subject will be based on his perception of the threat and the subject's ability to carry out the threat. An additional factor is the officer's knowledge of his own physical ability to manage the threat presented.

c. Level III Resistance – Physically Uncooperative

This is any type of resistance where the subject does not attempt to defeat the officer's attempt to touch or control him; but he still will not voluntarily comply with verbal and physical attempts of control. (e.g., dead weight does not react to verbal commands, etc.) A typical



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 5 of 17 |

situation is a sit-in protest, where subjects refuse to move or comply with verbal directions or commands.

This is the lowest level of physical resistance. The subject resists control through passive, physical actions. At this level, the offender never makes any attempt to defeat the physical contact of the officer.

d. Level IV Resistance – Defensive Resistance

Defensive resistance is any action by a subject that attempts to prevent an officer from gaining control of the subject (e.g., pulling away to defeat the escort position). It is not an attack on the officer, but a physical act designed to prevent the officer from gaining control.

e. Level V Resistance – Active Aggression

Active aggression includes physical actions/assaults against the officer or another person with less than deadly force (e.g., advancing, challenging, pushing, punching, kicking, grabbing, wresting, etc.). Subject may also be actively aggressive towards the officer or a third party (e.g., bystander, civilian).

f. Level VI Resistance – Lethal Force Assault

Lethal force is any force used against an officer and/or another person that may result in great bodily harm or the loss of human life. It is important to note that a subject's use of lethal force does not require the use of a weapon against the officer. Lethal force is any force which the officer believes could result in serious injury or death. Thus, if a subject is using martial arts techniques and is successfully assaulting the officer to the point of unconsciousness or serious injury, or if the officer believes the subject has the capacity to kill the officer (or another) unless stopped immediately, he could be construed as using deadly force.

2. Officer Response/Control Levels

a. Level I - Officer Presence

(1). Presence: The officer is present on the scene. This includes proper voice and/or other identification and awareness by the subject that he/she is dealing with an officer.

POLICE - #469-12.3

BIRMINGHAM POLICE DEPARTMENT

COB001476



(2) Interview Stance: The officer adopts a stance outside of his/her danger zone that provides appropriate protection and forms the basis of an effective physical response if attacked. In such a stance the firearm or strong side leg is back, away from the subject and the weak side leg is forward, the feet are about shoulder width apart, knees slightly bent and hands are up guarding the upper body.

b. Level II - Verbal Direction / Communication

(1) Dialogue: A two-way, controlled, non-emotional communication between the officer and subject aimed at problem identification and/or resolution.

(2). Verbal Direction: An officer tells or commands a subject to engage in or refrain from a specific action or non-action. The application of de-escalation tools will be used whenever possible to lower the levels of resistance.

(3). Touch: An officer employs a soft assisting touch to comfort, console or obtain the attention of a subject or a citizen in a non-confrontational situation.

c. Level III – Physical Control

<u>All Level III Responses require a Response to Resistance Information and Statement Report be completed.</u>

(1). Pain Compliance: Techniques that force a subject to comply with an officer by inflicting controlled pain upon specific points on the subject's body such as "Pressure Point Techniques".

(2). Take Downs: Techniques that redirect a subject to the ground, in a controlled manner, in order to limit his/her physical resistance and to facilitate the application of a restraint device.

d. Level IV – Intermediate Weapons

<u>All Level IV Responses require a Response to Resistance Information and Statement Report be completed.</u>

(1). Chemical Agents: Chemical Agents, OC, etc. are tools to minimize the possibility of physical confrontations with a non-



RULES AND REGULATIONS PROCEDURE NO. 113-3

USE OF FORCE

| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| --- | --- | --- | --- |
| 05/20/2020 | 05/20/2020 | 14 | Page 7 of 17 |

compliant subject, thereby decreasing the potential of injury to the officer and the subject.

e. Level V – Incapacitating Control

All Level V Responses require a Response to Resistance Information and Statement Report be completed.

(1). Hard Empty Hand Control Tactics: Defensive Striking Techniques, PPCT, may be delivered with officer's open hand, fist forearm, leg or foot. Primary target areas are the major muscle mass areas such as the legs arms shoulders and the torso. The strikes are intended to create temporary muscle paralysis.

(2). Conducted Energy Weapon: A conducted energy weapon, a Taser, projects two darts or acts as a drive stun device and delivers an electrical signal to cause muscle motor and sensory skill dysfunction. It is intended to temporarily immobilize a subject with minimal potential for causing death or serious physical energy, permanent disability or permanent disfigurement.

(3). Hard Intermediate Weapon / Baton

(a). Only departmentally issued or approved batons will be used.

(b). No officer will carry an impact weapon unless he has successfully completed the annual certified training.

(c). When carried by uniform employees, the baton will be secured in a manner consistent with established standards.

(d). At no time will an officer brandish or use the impact weapon as an intimidation device, unless the officer is attempting to prevent the further escalation of force.

(e). Other types of striking devices are prohibited except as authorized in Section VI of this policy. Primary targets are major muscle mass areas.

BIRMINGHAM POLICE DEPARTMENT

POLICE - #469-12.3

COB001478



RULES AND REGULATIONS PROCEDURE NO. 113-3

USE OF FORCE

| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 05/20/2020 | 05/20/2020 | 14 | Page 8 of 17 |

(f). Secondary targets are minor muscle mass areas.

(g). Third target areas may be joints and bones when the primary and secondary targets are ineffective.

(h). Lethal Force Targets: Head, Neck, Throat, and Clavicle.

Intentional impact weapon strikes to these areas will not be used unless the officer is justified in using Lethal Force.

(i). **The officer will ensure that the subject is transported to a medical facility for medical evaluation before transport to the jail.**

(j.) Any holds or restraints that critically reduces or prevents air or blood from passing through the neck will not be used, unless during a lethal force situation where there is no other avenue of preventing the officers death or the death of another person.

f. Level VI – Lethal Force (CALEA 1.3.2)
All Level VI responses require a Response to Resistance Information and Statement Report be completed.

(1). It will be the policy of the Birmingham Police Department to permit the use of lethal force only when:

(a). An officer reasonably believes that the officer's life is in jeopardy and that lethal force is immediately necessary to preserve the officer's life; or prevent serious bodily injury.

(b). An officer reasonably believes that the life of another is in jeopardy and that lethal force is immediately necessary to preserve that life; or prevent serious bodily injury.

(2). WHEN USE OF LETHAL FORCE IS NOT PERMITTED

BIRMINGHAM POLICE DEPARTMENT

POLICE - #469-12.3

COB001479



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 9 of 17 |

The use of lethal force will not be permitted under the following circumstances:

(a). An officer may not discharge a weapon as a warning at any time.

(b). An officer may not discharge a weapon at a moving or fleeing vehicle unless the officer reasonably believes that the officer or some other person is in immediate danger of death or serious bodily injury. The fact that the fleeing or moving vehicle is speeding or has committed some other traffic violation does not constitute grounds for belief that a serious and immediate danger of death or serious bodily injury exists.

(c). An officer will not purposely place themselves in front of a moving vehicle in an attempt to force the vehicle to stop. Shooting at a vehicle trying to hit an officer is prohibited unless the officer has no avenue of escape.

(d). An officer may not discharge a weapon from a moving vehicle unless the officer reasonably believes that the officer or another is in immediate danger of death or serious bodily injury.

(e). An officer may not use lethal force against fleeing felons unless:

1). The officer reasonably believes that the officer's life is in jeopardy and that lethal force is immediately necessary to preserve the officer's life or prevent serious bodily injury.

2). An officer reasonably believes that the life of another is in jeopardy and that lethal force is immediately necessary to preserve that life; or prevent serious bodily injury.

F. RESPONSE TO RESISTANCE AUTHORIZATION

1. Officers are authorized to use force to protect life, effect an arrest of a criminal offender, prevent escape of an arrested person, prevent



RULES AND REGULATIONS PROCEDURE NO. 113-3

USE OF FORCE

| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 05/20/2020 | 05/20/2020 | 14 | Page 10 of 17 |

commission of serious offenses or take a person into protective custody for mental health conditions.

2. Officers are authorized to use only that level of force that is objectively reasonable to bring an incident under control.

3. Officers are authorized to use only Department approved techniques and/or equipment to bring an incident under control except under exigent circumstances as noted in Section VI of this procedure.

4. Whenever possible and when such delay will not compromise the safety of the officer or another and will not result in the destruction of evidence, escape of a suspect, or commission of a crime, an officer shall allow an individual time and opportunity to submit to verbal commands before force is used.

5. Officers may draw or exhibit a firearm based on the tactical situation and the officer's reasonable belief that there is a substantial risk that the situation may escalate to the point where deadly force may be justified. When an officer has determined that the use of deadly force is not necessary, the officer shall, as soon as practical, secure or holster the firearm. Drawing or exhibiting a firearm under these circumstances does not constitute a use of force for reporting purposes.

G. PROGRESSIVE APPLICATION OF FORCE

The Birmingham Police Department supports the practice of progressive application of force. This simply implies the process of appropriate selection of force options in response to a reasonable assessment of risks presented in the confrontation; the level of compliance or degrees of non-compliance from the individual to be controlled and the proper selection of an objectively reasonable response. Each officer/citizen confrontation should flow in a logical and legal sequence of cause and effect. The member's tactical transition must be capable of escalation or engagement, stabilization of the situation or de-escalation or disengagement within the context of the confrontation toward the eventual goal of compliance and control.

The following factors must be evaluated by an officer when determining the appropriate level of control required for a situation.

1. Subject Factors

BIRMINGHAM POLICE DEPARTMENT

POLICE - #469-12.3

COB001481



a. Seriousness of the crime committed by the subject
b. Size, age and weight of the subject
c. Apparent physical ability of the subject
d. Numbers of subjects present
e. Weapons possessed or available to the subject
f. Known history of violence by the subject
g. Presence of innocents or potential victims in the area
h. Whether evidence is likely to be destroyed

2. Officer Factors

a. Size, physical ability and defensive tactics expertise of the officer
b. Number of officers present or available
c. Weapons or restraint devices available to officer
d. Legal requirements
e. Agency policy
f. Environment

Note: The preceding lists of factors are not all-inclusive. It is impossible to list every factor an officer may consider. When documenting a response to resistance, officers should note any factors or circumstances that they may have used in determining the level of force or control used in the event.

III. STANDARDS USED FOR JUDGING USES OF LETHAL FORCE

The conduct of all Birmingham Police Officers regarding the use of lethal force will be judged according to the provisions of this policy. Justification for the use of any force is limited to the facts and circumstances known or perceived by the officer at the time of the incident.

IV. REPORTING DISCHARGES OF FIREARMS

An officer who discharges a firearm in the line of duty or accidentally while on duty, off duty, or on extra work status, except at a firearms range, will make a verbal report immediately to a superior officer and will file a written report with his commanding officer as soon as practical thereafter, describing the circumstances in detail under which the firearm was discharged.

V. ANNUAL INSTRUCTIONS



RULES AND REGULATIONS PROCEDURE NO. 113-3

USE OF FORCE

| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 05/20/2020 | 05/20/2020 | 14 | Page 12 of 17 |

A. All Birmingham Police Officers will be instructed on the Department's "Response to Resistance Policy" at their annual firearms qualifications training and during their initial training at the Birmingham Police Academy.

B. All Birmingham Police Officers will be provided with a copy of the Department's "Response to Resistance Policy".

C. Justification for the use of lethal force must be limited to what reasonably appears to be the facts known or perceived by an officer at the time he decides to use such force. Facts unknown to an officer, no matter how compelling cannot later be considered in determining whether the use of lethal force was justified.

D. Officers will only draw or display a weapon when it is reasonable to believe it may be needed to protect themselves or others by the use of lethal force. Officers should be prepared to articulate this reasonable belief when needed.

## VI. OTHER THAN AUTHORIZED WEAPONS

Force may consist of the use of items, articles, instruments or equipment other than firearms which are designed, intended, and routinely utilized for other legitimate police purposes, such as vehicles, flashlights, etc. Deliberate use of any such item, article, instrument or equipment for any purpose other than that for which it was designed and intended is discouraged; however, if used in exigent circumstances, it must conform to parameters defined in the resistance control continuum.

## VII. DESTRUCTION OF ANIMALS

Officers may use weapons to defend themselves against vicious or otherwise dangerous animals. Such destruction requires that it can be accomplished safely with regard to other persons and property.

## VIII. RESPONSE TO RESISTANCE REPORTING PROCEDURES

A. Whenever the response to resistance is necessary to effect an arrest, to stop potentially dangerous and unlawful behavior, to protect the officer or another from injury, to protect subjects from injuring themselves or when attempting to detain a subject, the officers involved shall immediately report such facts to their supervisor and/or superior officer.

POLICE - #469-12.3

BIRMINGHAM POLICE DEPARTMENT

COB001483



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 13 of 17 |

B. A supervisor or superior officer, upon being notified that unusual force or other means has been used, shall proceed to the scene and/or meet with the officers involved and insure that all necessary written reports concerning the incident are completed and properly classified.

C. Required reports:

1. Incident Report (Police 172)

2. Response to Resistance Information and Statement Report (Police 761)

3. Arrest Report (Police 205)

    a. When subject/suspect is in custody and

    b. Formal charges are being preferred

D. All reports involving the response to resistance shall be distributed as follows:

1. Original to Report Review

2. One copy to the Chief of Police's Office

3. One copy to Internal Affairs

4. One copy to Police Personnel to be included in the member's file

5. One copy to the Deputy Chief of the Bureau involved through channels under a face sheet

6. One copy to the Commanding Officer of the personnel involved

7. One copy retained in the originating unit's file

8. One copy to be placed in each involved officer's file maintained by his present unit assignment

E. The officer(s) involved shall be listed as either the Reporting Person or Complainant/Victim on all Incident Reports.



F. All reports on incidents involving the response to resistance shall include but not be limited to:

1. Date of occurrence
2. Time of occurrence
3. Location of occurrence
4. Names of witnesses
5. Charges arising from incident
6. Type of force used
7. Description of and extent of any injury
8. De-escalation techniques attempted and/or used

G. Photographs shall be taken of all officers and prisoners/subjects involved in the incidents where the response to resistance caused injury or there are allegations of injury.

1. An Evidence Technician shall be called to make photographs if they are on duty.
2. Supervisors may use precinct cameras if there are no Evidence Technicians available.
3. All pictures taken of injuries to either the officer or subject shall be processed and maintained as either documentation of an injury or as evidence. Digital pictures must never be deleted or otherwise destroyed once taken. Refer to Procedure 116-14, Digital Camera Processing and Storage, for proper procedures.

IX. <u>RESPONSE TO RESISTANCE INFORMATION AND STATEMENT REPORT (CALEA 1.3.6d)</u>

A. A Response to Resistance Information and Statement Report will be used to assist in identifying training and equipment needs. The forms will also provide for the immediate documentation of the force used so that, should a complaint be filed, the pertinent facts would be readily available.



# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 15 of 17 |

The Response to Resistance Information and Statement Report shall be completed by the involved officer/s immediate supervisor.

B. A Response to Resistance Information and Statement Report will be completed if: (CALEA 1.3.6, a-d)

1. CS/OC Spray is applied.

2. The TASER is deployed.

3. Level III force or greater is applied.

4. Evident injury or reasonable claim of injury is made by recipient. In the event it is unknown which officer (s) caused the injury, all officers using Level III force or greater must complete a Response to Resistance Information and Statement Report.

5. K-9 engagement occurs.

6. Any discharge of a firearm during on or off-duty status; except for marksmanship training, firearms training, ballistic tests, or sporting events.

7. At the direction of a superior officer.

C. A Response to Resistance Information and Statement Report

Will be completed as soon as possible by the immediate supervisor of the officer who applied the force. The Response to Resistance Information and Statement Report will always be completed prior to the end of the shift. Use of Level III force requires the officer to notify his supervisor as soon as practical. Use of Level IV or higher requires the employee to immediately notify his supervisor.

1. Off-duty officers involved in response to resistance situations are subject to the same reporting procedures as on-duty officers. Any time a Response to Resistance Information and Statement Report is required; off-duty officers will notify an on-duty police supervisor immediately.

2. All incidents which officer's response results in force that causes physical injury (requiring medical attention) requires the employee

BIRMINGHAM POLICE DEPARTMENT

POLICE - #469-12.3

COB001486

to immediately notify an on-duty supervisor. The supervisor will ensure that an evidence technician is notified to take photographs of the obvious and/or apparent injuries. In the event that there is no technician on duty or otherwise unavailable pictures may be taken by the supervisor using a precinct digital camera.

D. Administrative Review Procedure (CALEA 1.3.7)

The immediate supervisor will complete the Response to Resistance Information and Statement Report, review it for completeness and clarity, and make a determination if the force used was in compliance with the Response to Resistance Policy. If all is in compliance, the immediate supervisor will sign the form and forward it along the chain of command. If the force is not in compliance, the immediate supervisor will bring the issue to the attention of the Unit/Shift Commander.

1. The Unit/Shift Commander receiving the form will assess for completeness, compliance with policy and compliance with training. If all is in compliance, the commander will sign the form and forward it to the Precinct/Division Commander. If the force is not in compliance, the commander will bring the issue to the attention of the Precinct/Division Commander.

2. The Precinct/Division Commander will determine if there are disciplinary issues pertinent to the response to resistance. If so, the Precinct/Division Commander will cause an administrative complaint to be initiated with an Internal Affairs Supervisor. If the Precinct/Division Commander finds that the response to resistance was reasonable, within policy, and consistent with training, he will endorse the Response to Resistance Information and Statement Report and forward it to the Office of the appropriate Deputy Chief.

3. After the review and completion, the Deputy Chief will then forward the original Response to Resistance Information and Statement Report to the Internal Affairs Division. Internal Affairs will log and file the form.

E. Annual Response to Resistance Analysis (CALEA 1.3.13)

# RULES AND REGULATIONS

PROCEDURE NO. 113-3

| USE OF FORCE | | | |
|---|---|---|---|
| DATE ISSUED | DATE EFFECTIVE | REVISION NUMBER | PAGE |
| 05/20/2020 | 05/20/2020 | 14 | Page 17 of 17 |

Internal Affairs will conduct an annual analysis of the Response to Resistance Information and Statement Report forms and present the analysis to the Chief of Police.

F. Medical Aid (CALEA 1.3.5)

After response to resistance incidents the officer will request Birmingham Fire and Rescue Service to provide appropriate medical attention and transport if deemed necessary.

1. Minor abrasions or bruises that can be treated with simple first aid do not require transportation to a medical facility unless requested by the subject.

2. The officers' lieutenant or the duty lieutenant will be notified as soon as possible whenever serious injuries have been inflicted by a department employee sufficient to cause the injured party to require major medical attention. In the absence of the officers' lieutenant or the duty lieutenant, the officers' precinct commander or the on-call captain will be notified.

3. If the response to resistance is such that the affected individual is admitted to a hospital, the officer's lieutenant or the duty lieutenant will immediately notify Internal Affairs Division Personnel.

G. Lethal Force Investigation and Administrative Follow-Up

Refer to Rules and Regulation 117-14: Serious Injury or Death Involving Police Officer, and 103-5: Firearms Review Committee.

Patrick D. Smith, Chief of Police