FILED

2024 Feb-22  PM 07:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SAMANTHA HARDIN,** } | |
| **MONEKA CHANTE MOORE as** } | |
| **PERSONAL REPRESENTATIVE FOR** } | |
| **THE ESTATE OF JAMARCUS MOORE** } | |
| } | **CASE NO.** |
| **Plaintiffs,** } | **2:21-cv-1002-AMM** |
| **vs.** } | |
| } | |
| **CITY OF BIRMINGHAM, and** } | |
| **ARIC MITCHELL** } | |
| } | |
| **Defendants.** } | |

_____

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

_____

**COME NOW** the Defendants, **CITY OF BIRMINGHAM** ("City"), a municipal corporation under the laws of the State of Alabama, and **ARIC MITCHELL** ("Mitchell")(collectively "Defendants"), by and through their attorneys, and respectfully move this Honorable Court to grant a verdict in its favor in this cause, against Plaintiffs Samantha Hardin and Moneka Chante Moore ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure 50(b). Defendants hereby renew their Motion for Judgment as a Matter of Law. (Doc. 127). Alternatively, Defendants request a new trial under Rules 59, 50(b), and/or 49. Alternatively, Defendants move for remittitur to eliminate or reduce damages. The basis for the renewed Motion and alternative Motions is based on the following grounds:

1

## I.      INTRODUCTION

This matter is a dangerous high-speed pursuit at night through six jurisdictions–Bessemer, Brighton, Lipscomb, Hueytown, City of Birmingham, and Midfield–by Plaintiffs, Jamarcus Moore and Samantha Hardin. Jamarcus Moore and Samantha Hardin were fleeing from Birmingham Police Officer Aric Mitchell and other Birmingham Police Officers and Police Officers from other jurisdictions. Jamarcus Moore and/or Samantha Hardin were firing a weapon out of the window of their vehicle during the pursuit, endangering the public.

On Saturday, June 15, 2019, Officer Mitchell was assigned to the City-Wide Task Force. Officer Mitchell was patrolling areas known for drug activity in the Ensley community. Mitchell exited an alley at 2415 Avenue E, where he noticed a blue sport utility vehicle SUV and a Toyota Moore's vehicle driving past him. Mitchell turned right from the alley and followed behind both vehicles. Officer Mitchell smelled marijuana in the area as he traveled behind the vehicles. Mitchell didn't initially know if the marijuana smell came from the vehicles or from another source in the area.

The SUV turned right, which allowed Officer Mitchell to get closer to the suspect vehicle, enabling him to smell the strong odor of marijuana coming from the car. Officer Mitchell ran the suspect vehicle's tag through the dispatcher and continued to travel behind the car, while waiting on a response from the dispatcher.

The tag came back on the vehicle as switched, meaning the car the tag was registered to was not the car that displayed that license plate.

Moore made several overt acts, which raised Officer Mitchell's suspicions and attention at a traffic light. Officer Mitchell got behind the vehicle and noticed body movement from the passengers. Moore started cutting interior lights on and looking around. Officer Mitchell entered the tag numbers as the light turned green. The tag came back to Toyota Avalon. When Officer Mitchell made the traffic stop, Moore made a right turn onto Avenue I and he stopped. When Officer Mitchell opened his car door, Moore drove off at a high rate of speed. Moore made a U-turn and went towards 20th Street and made a left towards Birmingport, Alabama.

Officer Mitchell began to pursue Moore. The pursuit continued throughout the BPD West Precinct coverage area and onto the interstate (I-20/59 Southbound). The pursuit went through the following jurisdictions: Bessemer, Brighton, Lipscomb, Hueytown, Birmingham, and Midfield. Officer Mitchell and joining pursuing units reported that an occupant in the vehicle fired shots at the officers. Moore was driving recklessly and at a high rate of speed and almost caused a collision with other vehicles.

Officer Michaela Hood and Officer Shantara Foster, in separate patrol vehicles, also responded to and assisted in the police pursuit of Plaintiffs' vehicle. During the pursuit, they both witnessed the Plaintiffs' vehicle frequently reaching

high rates of speed and being driven recklessly. During the pursuit, Officer Hood heard gun fire she believed came from the suspect vehicle and reported such to Dispatch. During the pursuit while on the 59 South/20 West interstate, Officer Foster also heard gunfire and deduced the suspect opened fire in the direction of the pursuing officers, near the 119-mile marker. Officer Foster heard Officer Aric Mitchell notify the dispatcher that the suspect opened fired on the pursuing officers.

The pursuit continued into Bessemer and Hueytown and was terminated in the 3200 block of Allison Bonnett Memorial Drive in Hueytown, Alabama after a collision between Officer Mitchell's vehicle, Moore's vehicle, and Officer Hood's vehicle.

Officer Michell got out of this vehicle and approached the driver's side. Officer Mitchell noticed the suspect's hand movement as he reached downward with his left hand towards a handgun on floorboard. Officer Mitchell shifted backwards and discharged his weapon four (4) times at Moore. Moore was fatally wounded and the passenger, Hardin, was wounded in her left leg.

## II.    STANDARD OF REVIEW

The Eleventh Circuit has established that, "[t]he standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a) ]." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007). So, as with motions

under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient ... to find for the party on that issue." Fed. R. Civ. P. 50(a)(1) and *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).

In considering whether the verdict is supported by sufficient evidence, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) quoting *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1560 (11th Cir. 1995).

A losing party may also move for a new trial under Rule 59 on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial "if in [the court's] opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (second alteration in original) (quoting *U. S. for Use & Benefit of Weyerhaeuser Co. v. Bucon Const. Co.*, 430 F.2d 420, 423

(5th Cir. 1970)) (internal quotation marks omitted).

## III.   ARGUMENT

### A. Mitchell is entitled to Qualified Immunity.

The protection of qualified immunity protects Officer Mitchell from all federal claims against him. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7 (2015). It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* Qualified immunity "shields public officials from suits against them in their individual capacities for torts committed while performing discretionary duties unless the tortious act violates a clearly established statutory or constitutional right." *Mahone v. Ben Hill Cnty. Sch. Sys.*, 377 F. App'x 913, 915 (11th Cir. 2010). Officer Mitchell is entitled to qualified immunity for Ms. Hardin's and Ms. Moore's excessive force claims against him.

### a.  Discretionary Authority

To be entitled to qualified immunity, a defendant must first prove he was acting within the scope of his discretionary authority when the alleged wrongful conduct occurred. *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994). From the record, it is clear that Officer Mitchell was acting as a police officer when he attempted to stop Moore's vehicle.

Discretionary authority includes all actions taken by officers in performance of their duties that are within the scope of their authority. *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011). Officers act within their discretionary authority when they arrest and interact with arrestees as part of their job-related "arsenal of powers" and responsibilities.[1] *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266–67 (11th Cir. 2004).

In the instant matter, within this framework, Plaintiff must prove that Officer Mitchell alleged actions "compel . . . the conclusion for every like situated, reasonable government agent" that what Officer Mitchell allegedly did "violates federal law." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998). Mitchell acted within the scope of his discretionary authority by shooting Moore to stop him from inflicting serious injury or death upon the public at large.

Once a defendant has shown that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred, the plaintiff "bears the burden of demonstrating that the defendant violated clearly established law." *Brown v. Cochran*, 171 F.3d 1329, 1332 (11th Cir. 1999), *White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1285 (N.D. Ala. 2015), *as amended* (May 27, 2015). The Courts ask two questions to determine whether immunity is

---

[1] The discretionary-authority question is not whether officers have used their powers in an authorized manner. *See id.*; *see also Verret v. Alabama Dep't of Mental Health*, 511 F. Supp. 2d 1166, 1174–75 (M.D. Ala. 2007).

appropriate: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (2) "If a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). This two-part analysis may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The plaintiff must present specific, nonconclusory factual allegations that establish improper motive and must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the improper motive." *Id.* at 1333 (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998). The plaintiffs failed to present specific, nonconclusory factual allegations that establish improper motive.

### b. Clearly Established Law

Once a defendant has shown that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred, the plaintiff "bears the burden of demonstrating that the defendant violated clearly established law." *Brown v. Cochran*, 171 F.3d 1329, 1332 (11th Cir. 1999), *White*, 96 F. Supp. 3d at 1285, *as amended* (May 27, 2015). The Courts ask two questions to determine whether immunity is appropriate: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

constitutional right?" (2) "If a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). This two-part analysis may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The plaintiff must present specific, nonconclusory factual allegations that establish improper motive and must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the improper motive." *Id.* at 1333 (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)).

Under the Fourth Amendment, this Court must evaluate Officer Mitchell's use of force based on an objective standard of reasonableness. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). That standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). "The inquiry requires analyzing the totality of the circumstances." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).

The Eleventh Circuit has established that it must determine reasonableness from the perspective of "a reasonable officer on the scene at the time the events unfolded," *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal

quotation marks omitted). That inquiry <u>does not</u> employ "the 20/20 vision of hindsight." *Plumhoff*, 572 U.S. at 775 (internal quotation marks omitted). Instead, the court must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (alteration adopted) (internal quotation marks omitted). "[I]t is reasonable, and therefore constitutionally permissible, for an officer to use deadly force when he has probable cause to believe that his own life is in peril." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) (internal quotation marks omitted).

To determine whether an officer has used excessive force the court weighs the level of force used against (1) the severity of the suspect's crime, (2) the immediacy of the threat posed by the suspect to the safety of the officers or others, and (3) whether the suspect sought to evade or resist arrest. See *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Applying those factors, the Eleventh Circuit has held that an officer may constitutionally use deadly force when: (1) he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or that the suspect "has committed a crime involving the infliction or threatened infliction of serious physical harm," (2) he "reasonably believes that the use of deadly force [i]s necessary to prevent escape" and (3) he "has given some warning about the possible use of deadly force, if feasible." *McCullough v. Antolini*,

559 F.3d 1201, 1206 (11th Cir. 2009) (quotation marks omitted).

It is clear in the current case that Plaintiffs obviously intended to evade arrest through numerous jurisdictions and fired a weapon endangering the public. Plaintiff Hardin admitted that it was Moore's intention to try to get away from the police and that she made no effort to stop him or even so much as tell him to stop. Any reasonable person would consider the more than twenty-minute-long pursuit, with multiple law enforcement vehicles following with lights and sirens to be adequate warning about the possible use of deadly force. Further, Plaintiffs led law enforcement on a lengthy pursuit through six different jurisdictions during which they drove recklessly and at high rates of speed, firing a weapon and almost causing accidents with other vehicles multiple times. After Moore's reckless driving, evasion, and gunfire, the pursuit ended in a vehicle crash. After which  Officer Mitchell approached the driver's window and saw Moore reach for what Officer Mitchell reasonably believed was a firearm. Officer Mitchell dropped back and fired four (4) shots at Moore killing him.

The Courts have held that: "Our cases also make clear that, under the circumstances, the threat that the officers faced here was sufficiently "immediate" to warrant deadly force. Indeed, we have "consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding

the officer's use of deadly force." *McCullough v. Antolini*, 559 F.3d 1201, 1207 (11th Cir. 2009) (officers' use of deadly force not unreasonable after suspect drove in threatening manner even though original traffic stop was only for excessive window tint). What we have said before in similar circumstances applies here: "Even if in hindsight the facts show that [the officers] could have escaped unharmed ... a reasonable officer could have perceived that [Marquis] was using [his car] as a deadly weapon," and thus the officers "had probable cause to believe that [Marquis] posed a threat of serious physical harm." *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005)."

"For the Fourth Amendment, the touchstone for this inquiry is "objective reasonableness." See *Graham*, 490 U.S. 386. And, the "reasonableness" must be judged from the perspective of an officer on the scene. *Id.* In addition, we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id. See also Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002).

Recently, the Eleventh Circuit upheld qualified immunity for an Officer that, after a high-speed chase, stepped out of his vehicle to make an arrest when the suspect's car suddenly went into reverse; the Officer fired 11 shots through the back windshield and side windows as the car passed near him, then he changed magazines

and fired another 10 shots, killing the driver and injuring two passengers. *Tillis on behalf of Wuenschel v. Brown*, 12 F.4th 1291, 1294 (11th Cir. 2021). This current case is even clearer, given the Plaintiffs' discharged a weapon at the officers and reaching for the weapon in view of Officer Mitchell and other officers. Also, if the Officer in *Tillis* was considered to use reasonable force when he fired twenty-one shots including a magazine change, then Officer Mitchell's mere four shots must also be considered reasonable given the circumstances. Both actions of the officers in the *Tillis* case and the current case were high-speed chases resulting in the need for officers to use deadly force.

### c. Special Interrogatory

The question of what circumstances existed at the time of the encounter is a question of fact for the jury—but the question of whether the officer's perceptions and attendant actions were objectively reasonable under those circumstances is a question of law for the court. *Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018) citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *see also Harris v. Coweta Cnty.*, 21 F.3d 388, 390 (11th Cir. 1994) (questions of "whether the law allegedly violated was clearly established at the time of the complained-about conduct" and "whether the official's conduct was objectively reasonable in light of the information known to the official at the time" are "objective, albeit fact-specific, inquiries which we undertake as questions of law" (citation omitted) (*citing Anderson v. Creighton*,

483 U.S. 635, 641 (1987), and *Mitchell v. Forsyth*, 472 U.S. 511, 526–28 (1985))).

"Where the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues." *Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018) citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996).

In this case the question of fact was presented to the jury in the form of a special interrogatory presented by this Court; the jury was asked, "Do you find that Officer Mitchell perceived that Mr. Moore posed an imminent threat of physical harm to the officers or others at the time that Officer Mitchell shot Mr. Moore and Ms. Hardin?" The jury answered, "Yes." (Doc. 137, pg. 10). The inclusion of this special interrogatory speaks to the factual issues related to Defendant's Mitchell qualified immunity affirmative defense. Because the jury determined that it was reasonable for Officer Mitchell to perceive that Mr. Moore posed an imminent threat of physical harm at the time he discharged his weapon, this Court must, as a matter of law, grant qualified immunity to Officer Mitchell.

### B. Defendants are entitled to State-Agent Immunity.

The City and Mitchell plead State-agent and discretionary function immunity to the state law claims that is available to all public employees and officials, including police officers, sued in their individual capacities for actions taken

14

pursuant to their official duties. ("It is well established that, if a municipal police officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune." *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005) quoting *Howard v. City of Atmore*, 887 So.2d 201, 211 (Ala.2003).)   The City and Mitchell claim they are entitled to State-agent and discretionary function immunity to the assault and battery and wrongful death claims.

"The Alabama Supreme Court has largely equated qualified immunity with discretionary-function immunity, and so the same facts which establish an entitlement to qualified immunity may also establish that the officers are entitled to discretionary-function immunity. *Sheth v. Webster*, 145 F.3d 1231, 1240 (11th Cir. 1998) (per curiam); id. at 1239 ("Under both Alabama law and federal law, the core issue is whether a defendant violated clearly established law.")." *Hunter v. Leeds, City of*, 941 F.3d 1265, 1284 (11th Cir. 2019).   "Allegations of negligence are not sufficient to remove the immunity the City is provided for [an officer's] performance of a discretionary function." *Ex parte City of Tuskegee*, 932 So. 2d 895, 906 (Ala. 2005)(quoting *City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002)).

State-agent immunity also applies to employees of municipalities. "Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State." *City of Birmingham v. Brown*, 969 So. 2d 910, 916 (Ala.

2007) (citing see *Ex parte City of Birmingham*, 624 So. 2d 1018 (Ala. 1993)). The Alabama Supreme Court has now established a two-part "burden-shifting" analysis when a party raises the defense of State-agent immunity. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). To claim State-agent immunity, a State agent initially bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. *Giambrone*, 874 So. 2d at 1052; *Ex parte Wood*, 852 So. 2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. *Giambrone*, 874 So. 2d at 1052; *Ex parte Wood*, 852 So. 2d at 709. State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld <u>only</u> upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Giambrone*, 874 So. 2d at 1057.

Additionally, poor judgment or wanton misconduct, an aggravated form of negligence, *does not* rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*. Plaintiffs failed to prove the City and Mitchell acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority with regards to Plaintiffs. Further, because the jury found that Officer Mitchell perceived Mr. Moore posed an imminent threat of

16

serious physical harm to the officers or others at the time that he shot Mr. Moore and Ms. Hardin, then Officer Mitchell must have had reasonable justification for discharging his weapon. As such, the City and Mitchell are entitled to State-agent and discretionary function immunity.

### C. Alternatively, a new trial is due to be granted based on the insufficiency of evidence to support the jury's verdict and the verdict being against the clear weight of the evidence.

Alternatively, Defendant moves to request a new trial under Fed. R. Civ. P. 59 and 50(b). This motion is based on both the insufficiency of evidence to support the jury's verdict, as outlined above, as well as the verdict being against the clear weight of the evidence.

In contrast to the renewed Motion for Judgment as a Matter of Law, for a Motion for a New Trial the Court can weigh the evidence independently and is not required to only view the evidence in favor of the non-moving party. "Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment] notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254–55 (11th Cir. 2016), *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982), and *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1115 (5th Cir. 1980)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Williams*

17

*v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). A new trial may be warranted even if the evidence was legally sufficient for the case to reach the jury. Applying this standard to the analysis of the insufficiency of evidence above, this Court should grant a new trial in this case.

The verdict returned in this case was against the clear weight of the evidence. A judge should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) citing *Hewitt*, 732 F.2d at 1556 (internal quotations and punctuation omitted). Because it is critical that a judge does not merely substitute her judgment for that of the jury, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.*

Further, under Fed. R. Civ. P. 49 (3) and (4), when the Jury answers are consistent or inconsistent with each other but also inconsistent with the general verdict the Court may order a new trial.

### D. Alternatively, damages should be denied or reduced via remittitur based on facts.

The motion for a judgment notwithstanding the verdict is a procedural device

used to challenge the sufficiency of the evidence to support the jury's verdict. See, Ala. R. Civ. P. 50(b).; *Luker v. City of Brantley*, 520 So. 2d 517 (Ala. 1987). Ordinarily, the denial of a directed verdict or a judgment notwithstanding the verdict is proper where the nonmoving party has produced substantial evidence to support each element of his claim. However, if punitive damages are at issue in a motion for a directed verdict or a judgment notwithstanding the verdict, then the "clear and convincing" standard applies. *Senn v. Alabama Gas Corp.*, 619 So. 2d 1320 (Ala. 1993).

Ala. Code § 6-11-20(a) (1975), provides that punitive damages may be awarded in tort actions "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in ... wantonness" that caused injury to the plaintiff. "Clear and convincing evidence" is defined in the Code:

"Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." Ala. Code § 6-11-20(b)(4).

Thus, the "clear and convincing" standard requires the trial judge to do more than merely determine whether the nonmoving party has presented substantial

evidence to support the claim for punitive damages. It is not the trial judge's function when ruling on a directed verdict or judgment notwithstanding the verdict motion to weigh the evidence; rather, she must view the evidence in a light most favorable to the nonmoving party. If in viewing the evidence in that light the judge reasonably can conclude that a jury could find the facts in favor of the nonmovant and that the jury could be firmly convinced of that decision after considering the evidence in opposition, then the judge should deny the motion. *Cessna Aircraft Co. v. Trzcinski*, 682 So. 2d 17, 19 (Ala. 1996).

Officer Mitchell's actions do not give rise to punitive damages. Ala. Code § 6-11-20 states:

> "Punitive damages may not be awarded in any civil action,… other than in a tort action where it is proven by *clear and convincing evidence* that the defendant *consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff*."

Ala. Code § 6-11-26 (emphasis added).

Plaintiffs must prove with clear and convincing evidence that Defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the Plaintiffs. Under the statute clear and convincing evidence is defined as "evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." There is no clear and convincing evidence of fraud, oppression or malice by Officer Mitchell or the City.

Therefore, the Plaintiffs' punitive damages claim is not viable.

A district court which finds that a jury's award of damages is excessive may grant the defendant a new trial on this basis. *Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *17 (S.D. Fla. May 13, 2008), *aff'd,* No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (*citing Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999)). Alternatively, "the court can order remittitur and reduce the damages." *Id.* (*citing Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1310 (11th Cir. 1990); *Wilson v. Taylor*, 733 F.2d 1539, 1549–50 (11th Cir. 1984)). A court may issue a remittitur if the "jury's award is unreasonable on the facts." *Id.* at 14. "[A] court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." *Johansen*, 170 F.3d 1320 (citation omitted). If remittitur is chosen as the appropriate avenue, it may not be done absent the plaintiff's consent. *Johansen*, 170 F.3d at 1329 ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact.").

The compensatory damages awarded to Ms. Hardin for her excessive force claim against Officer Mitchell is not supported by evidence. Ms. Hardin presented almost no testimony about her damages. She answered, very tersely, a mere few questions about being denied Mr. Moore's presence in her life. She offered no

evidence related to her physical injuries, no medical treatment or billing, and no testimony related to permanent injuries or disfigurement. This is simply not enough evidence to support a compensatory damages award of $1,500,000.00 for her excessive force claim against Officer Mitchell.

Further, Ms. Moore's award of $2,750,000.00 punitive damages in the wrongful death action against the City and Officer Mitchell is both constitutionally excessive as well as unreasonable given the facts presented. The jury specifically found that Officer Mitchell perceived that Mr. Moore posed an imminent threat of physical harm. Officer Mitchell, as a law enforcement officer acting under color of state law, had a duty to respond to that threat. As such, the nearly $3 million dollar verdict is excessive and should be reduced so as to be justiciable.

## IV.    CONCLUSION

Officer Aric Mitchell is entitled to qualified immunity and state agent/discretionary function immunity. Therefore, the City of Birmingham is also entitled to the same immunities. The Plaintiffs have failed to prove their state law claim and federal claims. As such, the Court should dismiss Plaintiffs' claims and find in favor of Defendants. Defendants hereby renew their Motion that this Court grant judgment in its favor and dismiss Plaintiffs' case. In the alternative, Defendants request a new trial under Rule 59 and Rule 50(b) based on the insufficiency of evidence to support the jury's verdict and the verdict being against the clear weight

of the evidence. Alternatively, a new trial is due to be granted. Alternatively, a

remittitur should be granted to eliminate or reduce the verdict.

        Respectfully Submitted,

        */s/Nicole E. King*
        Nicole E. King
        City Attorney

        */s/Fredric L. Fullerton, II*
        Fredric L. Fullerton, II
        Assistant City Attorney

        */s/Samantha A. Chandler*
        Samantha A. Chandler
        Assistant City Attorney

City of Birmingham
City Attorney's Office - Litigation Division
600 City Hall, 710 North 20th Street
Birmingham, Alabama 35203
(205) 254-2369/(205) 254-2502 FAX
nicole.king@birminghamal.gov
fredric.fullerton@birminghamal.gov
samantha.chandler@birminghamal.gov

## CERTIFICATE OF SERVICE

        I hereby certify that on February 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard Rice, Esq.
The Rice Firm LLC
N. 420 20th Street, Ste. #2200
Birmingham, Alabama 35203

rrice@rice-lawfirm.com

Johnathan F. Austin, Esq.
Austin Law, P.C.
P.O. Box 321173
Birmingham, AL 35212
austin@jaustinlawpc.co

/s/Samantha A. Chandler
Of Counsel